UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| TYLER MCCOY, on behalf of himself and all others similarly situated, | ) ) ) | C/A: 2:14-cv-03171-PMD |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **MEMORANDUM TO SUPPORT PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND TO AUTHORIZE NOTICE TO PUTATIVE CLASS MEMBERS** |
| RP, INC. d/b/a KICKIN' CHICKEN; RPM MT. PLEASANT, INC.; RPM WEST ASHLEY, INC.; RPM JAMES ISLAND, INC.; RPM SUMMERVILLE, INC.; R. DAVID MILLER, individually; WILLIAM G. "CHIP" ROBERTS, III, individually; and ROBERT PERRY, individually, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiff, Tyler McCoy ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned counsel, submits this Memorandum to support his Motion for an Order of Conditional Certification, pursuant to section 16(b) of the Fair Labor Standards Act 29 U.S.C § 216.

**NATURE OF CASE**

Plaintiff filed this action on August 7, 2014, as a Collective Action, alleging Defendants violated provisions of the FLSA. The primary section that Plaintiff alleges **Kickin' Chicken** violated is the "Tip Credit" of the FLSA, § 203(m), which is what **Kickin' Chicken** was taking for *all employees to whom it was paying less than the statutory minimum wage*. Unfortunately, counsel for Defendants will not consent to conditional certification or the mailing of notice to putative class members.

Memo in Support of Motion for Conditional Class Certification and to
Authorize Notice to Potential Class Members
C/A: 2:14-cv-03171-PMD

## FACTS

The five (5) corporate defendants each do business as the restaurant **Kickin' Chicken** at five (5) locations: Downtown Charleston; James Island; Mt. Pleasant; West Ashley; and Summerville. **Exh. 1 - Aff. of Bruce E. Miller**.[1] The three (3) individual defendants each own one-third (1/3) of each of the corporations doing business as **Kickin' Chicken**. *Id*. Employees at **Kickin' Chicken** were advised of the Tip Pool policy by a one (1) page document under the letterhead **Kickin' Chicken**, attached as **Exh. 2**. All five (5) of the locations used the same menu, attached as **Exh. 3**. During the time period of three (3) years prior to the filing of this lawsuit through March 26, 2015 (when Discovery responses were served), **Kickin' Chicken** had ten (10) General Managers ("GM") at its five (5) locations; however, there has been great overlap. One (1) person has been GM at three (3) locations. Four (4) people have been GM at two (2) locations. **Exh. 1**.

**Kickin' Chicken** paid Plaintiff and other employees, assigned to different positions, a direct, or hourly, rate less than the statutory minimum wage of seven and 25/100 dollars ($7.25) per hour by taking the Tip Credit under the FLSA. **Exh. 4 – Aff. of Tyler McCoy**. Defendants then created a "Tip Pool" by deducting from the tips of some of these employees amounts that were redistributed to other employees, some of whom were back-of-the-house kitchen staff, who are clearly not employees who "customarily and regularly" receive tips. *Id*.

---

[1] The affidavit summarizes information found in the numerous answers and responses to written discovery of Defendants. Defendants initially filed one Answer on behalf of all Defendants, but then went to a strategy of having a separate Answer for each Defendant. The undersigned concludes this is part of Defendants' strategy to make it seem as if these are separate employers. In the end, they are all operating as **Kickin'Chicken**. Rather than burdening the court with over thirty-two (32) copies of these documents, the undersigned has summarized clear admissions. We do not anticipate Defendants attempting to contradict any of this. If they attempt to do so, Plaintiff will submit all of the needed copies, which will support the affidavit.

2

Memo in Support of Motion for Conditional Class Certification and to
Authorize Notice to Potential Class Members
C/A: 2:14-cv-03171-PMD

### ARGUMENT

**I.    Definition of Class**.

Under the FLSA, this action is at the stage of "*Conditional Class Certification,*" not final Certification. After discovery, **Kickin' Chicken** will have the opportunity, if it wishes, to move for decertification, which could be the entire class or a portion of the Putative Class. At this current stage, under the FLSA, an action may be maintained by any one or more employees against an employer on behalf of themselves and others similarly situated. 29 U.S.C. §216(b).

> The FLSA does not define "similarly situated" and the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has not yet applied a standard for when plaintiffs are similarly situated in the context of an FLSA class certification action. *Choimol*, 475 F. Supp. 2d at 562. However, federal courts, including this Court, have developed a two-step analysis for establishing "similarly situated" plaintiffs and granting conditional certification. *Id*. The first step is the notice stage, where "the district court decides whether to provide initial notice of the action to potential class members." *Id*. If the court decides to notify the class, potential plaintiffs may opt-in to the action. "**[T]his determination is made using a fairly lenient standard,**" because the court, and the parties, have minimal evidence at this point in the proceedings. *Id*. (citations omitted). In general, "courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Sperling v. Hoffman-LaRoche, Inc*., 118 F.R.D. 392 (D.N.J. 1988), *aff'd in part*, 862 F.2d 439, 444 (3d Cir. 1988), *aff'd*, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)."

*Gregory v. Belfor USA Group, Inc*., 2012 U.S. Dist. LEXIS 104573 (E.D. Va. July 26, 2012) (emphasis added).

A prevailing treatise[2] on FLSA Collective Action litigation weighs in on this issue. "Courts in the Fourth Circuit and elsewhere have held that [employees are similarly situated] when plaintiffs raise a similar legal issue as to coverage, exemption or nonpayment of minimum

---

[2] This treatise is authored and edited entirely by the Labor & Employment team of Seyfarth Shaw, which boasts having one of the top ten employment practices representing management exclusively. Although the treatise outlines the law for both employees and employers, it gives opinions and tips to help attorneys representing employers.

Memo in Support of Motion for Conditional Class Certification and to
Authorize Notice to Potential Class Members
C/A: 2:14-cv-03171-PMD

wages or overtime arising from a factual setting that is "manageably similar" as to job requirements and pay provisions." *McLaurin v. Prestage Foods, Inc.,* 2010 WL 4693662, at *1 (E.D.N.C. 2010); *De Luna-Guerrero v. North Carolina Grower's Ass'n, Inc.* 338 F. Supp.2d 649, 654 (E.D.N.C. 2004). Noah H. Finkel, et. al., *Wage & Hour Collective and Class Litigation,* § 4.01[1], (5th ed. 2015) (citations added) (emphasis added). **Exh. 5**. At least one (1) court within the borders of our Fourth Circuit has described the test for similarly situated employees as more of a legal inquiry than a factual one. *Houston v. URS Corp.*, 591 F. Supp.2d 827, 831 (E.D. Va. 2008).

The treatise expounds further on this topic as it relates to violation of the Tip Credit.

> **With regard to tipped employees specifically,** "[t]he name and nature of a position is of less relevance in cases in which the alleged FLSA violation is, for example, improper pooling of tips or other prohibited pay practices. The issue of job duties is sometimes not even addressed at all in such cases because it simply does not relate to the alleged FLSA violation.

Finkel, et. al., *Wage & Hour Collective and Class Litigation,* at § 4.05 (emphasis added) **Exh**. **5**.

Plaintiff respectfully requests that the Court:

1. Conditionally certify this matter as a collective action for actual damages, liquidated damages, and attorneys' fees and costs under 29 U.S.C. §216(b); and

2. Define the class as follows: "Any individual employed at **Kickin' Chicken** (Downtown Charleston, James Island; Mt. Pleasant; West Ashley; or Summerville) at any time since [DATE][3] who at any time was paid an hourly rate less than the statutory minimum wage of Seven and 25/100 dollars ($7.25) per hour and either contributed money to a tip pool or received money from a tip pool."

---

[3] The Order will use a date of three years prior to the Order.

Memo in Support of Motion for Conditional Class Certification and to
Authorize Notice to Potential Class Members
C/A: 2:14-cv-03171-PMD

### A. The putative class should include all employees who made less than $7.25 per hour.

Plaintiffs need only be employees of the same restaurant enterprise and be alleging the same type of FLSA violation. *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007). Within the Fourth Circuit, it has been held that servers claiming an FLSA violation because they were not paid a sufficient minimum wage and "back-of-house" staff who alleged that they were misclassified as exempt were similarly situated enough such that they belonged in the same class for the purposes of conditional certification. *Ruiz v. Monterey of Lusby, Inc.*, 2014 U.S. Dist. LEXIS 61791 (D. Md. May 5, 2014)**.** In other restaurant cases of this nature, it has been found that back waiters, servers, and bartenders can be in the same class for the purposes of conditional certification, as can food runners, bussers, and other tip eligible employees. *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114 (S.D.N.Y. 2014); *Capsolas v. Pasta Res., Inc.,* 2011 U.S. Dist. LEXIS 49926 (S.D.N.Y. May 9, 2011).

In this action, the putative class members are **Kickin' Chicken** employees who were paid less than the statutory minimum wage of Seven and 25/100 dollars ($7.25) per hour and either contributed money to a tip pool or received money from a tip pool. The policy that Plaintiff knows **Kickin' Chicken** violated is the "Tip Credit" of the FLSA, which is what **Kickin' Chicken** was taking for *all employees to whom it was paying less than the statutory minimum wage*. **Kickin' Chicken** was allowing the tips, or the sharing of a tip pool, to make up the difference between the direct, or hourly, wage received by the employee and at least the required minimum wage. If **Kickin' Chicken** loses the Tip Credit, it loses it for all individuals during the period of the violation. In other words, once **Kickin' Chicken** *poisoned this Tip Pool, all employees who drank from it were poisoned* and became members of the putative class.

5

Memo in Support of Motion for Conditional Class Certification and to
Authorize Notice to Potential Class Members
C/A: 2:14-cv-03171-PMD

> **B.     The putative class should include employees of all five Kickin' Chicken locations**.

The tip pool policy at each of the five (5) locations doing business as **Kickin' Chicken** is significantly similar enough to warrant conditional certification for all of the entities. At this time, a limited amount of discovery has been conducted as to the tip pooling policies and management structures of all five **Kickin' Chicken** entities. At the other four (4) locations, the restaurant had similar, mandatory tip pools.[4] **Exh. 4, ¶¶ 9, 10.**

At the conditional certification stage of a factually similar action, a district court in the Second Circuit noted that the conditional certification stage is not the appropriate time to determine the credibility of competing views regarding the legality of the practice being challenged. *Chhab v. Darden Rests., Inc*., 2013 U.S. Dist. LEXIS 135926 (S.D.N.Y. Sept. 19, 2013) The Court noted, "[T]he accuracy of the parties' competing views will be tested through discovery and may be raised before the Court on a motion to decertify the class after the close of discovery. At this stage, however, defendants' untested declarations do not undermine plaintiffs' showing." *Id*., at 13.

According to Defendants, the exact percentage being tipped out varies slightly among the entities, but this does not indicate that the policy or plan in place was different enough to warrant not conditionally certifying the class. *See Capsolas v. Pasta Res., Inc.,* 2011 U.S. Dist. LEXIS 49926, 8-12 (S.D.N.Y. May 9, 2011) (holding that where the exact percentages contributed to a

---

[4] At the conditional certification stage, affidavits may be based on the personal knowledge of the affiant. The standard, at this stage, is not in a form admissible at trial. *Robinson v. Empire Equity Group, Inc*., 2009 U.S. Dist. LEXIS 107607 (D. Md. Nov. 18, 2009). Hearsay is considered to be within an individual's personal knowledge and is appropriate to consider given the modest factual support required at this stage. *Id; See also White v. MPW Indus. Servs.,* 236 F.R.D. 363 (E.D. Tenn. 2006) ("[A]ffidavits submitted in support of a motion for conditional certification pursuant to §216(b) need not meet the standard set forth in Rule 56(e).)

Memo in Support of Motion for Conditional Class Certification and to
Authorize Notice to Potential Class Members
C/A: 2:14-cv-03171-PMD

tip pool at different restaurants with different names and styles was not enough to invalidate conditional certification where **each of the restaurants had common ownership**) (emphasis added).

Additionally, the fact that the restaurants not only shared common ownership, but shared management as well is indicative of the policies in place being substantially similar. As noted above, during the relevant time period there was a lot of overlap amongst the GMs. With the amount of overlap amongst management, it is unreasonable to suggest that each tip pool policy differed from one (1) location to the next.

## II.     Notice to Potential Class Members.

The purpose of notice in a collective action is to give potential members accurate and timely information in order **to make an informed decision about whether to participate** in the pending action. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169-70, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989) (emphasis added). The content of the notice is subject to the broad discretion of the trial court, wherein the overarching policies of the collective suit, the broad remedial purpose of the FLSA, and the above stated purposes of the notice itself are the main objectives the trial court intends to effectuate. *Id; Dybach v. Florida Dep't of Corrections*, 942 F.2d 1562 (11th Cir. 1991); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp.2d 101, 105-06 (S.D.N.Y. 2003).

Trial courts have suggested numerous, different strategies to effectuate best the proper notice depending on the specific circumstances of the class at hand, including, but not limited to: posting notice in the place of business; emailing notice; creating a website coupled with a press release directing people to find notice on the site; and making phone calls to potential class members with a court-approved script. *Amrhein v. Regency Mgmt. Servs., LLC*, 2014 U.S. Dist.

Memo in Support of Motion for Conditional Class Certification and to
Authorize Notice to Potential Class Members
C/A: 2:14-cv-03171-PMD

LEXIS 36477 (D. Md. Mar. 20, 2014) (holding that email is an appropriate means of disseminating notice, as it is not as interactive as a telephone call); *Arevalo v. D.J.'s Underground, Inc.*, 2010 U.S. Dist. LEXIS 109193 (D. Md. Oct. 13, 2010) (stating that many courts allow notice via telephone as a matter of course); *Guy v. Casal Inst. of Nev., LLC*, 2014 U.S. Dist. LEXIS 65056 (D. Nev. May 12, 2014) (stating that email is an efficient, reasonable, and low cost supplemental form of notice, particularly where the Defendants may lack current physical mailing address information for its former employees); *Espenscheid v. DirectSat USA, LLC*, 2010 U.S. Dist. LEXIS 55578 (W.D. Wis. June 4, 2010) (allowing for a website to be created with a press release directing people to it and for phone calls to be made with a court approved script).

With the above-stated purpose, or goal, of the notice, and the numerous approved methods of delivering the notice, it is this court's duty to approve the notice that will best accomplish the goal *for these putative members*.

### A.     **Plaintiff's Requested Notice**.

Plaintiff requests that the Court enter an order:

1.    Requiring Defendants to provide counsel for Plaintiff,[5] in electronic (Excel spreadsheet) format, the following information for each member of the putative class:

   a.    Full names and identifying if the individual is a current employee;
   b.    Dates of employment;

---

[5] Plaintiff is amenable to allowing Defendants to use a Third Party Administrator ("TPA") to disseminate the notice, as long as all costs associated with the TPA are paid by Defendants. In three similar collective actions, *Alshehabi v. Hymans Seafood, et al.*; 2:14-cv-02724; *Browder v. Peninsula Grill Associates, LLC, et al.*; 2:14-cv-04135; and *Elmquist v. Flo-Pie, Inc., et al.*; 4:14-CV-3548-RBH, Defendants have used Simpluris, Inc. as the TPA. Plaintiff also requests that the same information provided to the TPA be remitted to attorneys for Plaintiff.

8

Memo in Support of Motion for Conditional Class Certification and to
Authorize Notice to Potential Class Members
C/A: 2:14-cv-03171-PMD

        c.    All known mailing addresses;
        d.    All known email addresses; and
        e.    All known telephone numbers.

2. Authorizing the mailing of Notice and Consent, **Exh. 6**, through U.S. Mail to all known addresses;

3. Authorizing the emailing of the "Email" Notice and Consent, **Exh. 7**, with **Exh. 6** attached to the email, to all putative class members who have email addresses;

4. Posting of laminated Notice, **Exh. 6**, with an adjacent envelope or folder, containing the consents, in a communal area within **Kickin' Chicken**; and

5. Sending a text message of the Reduced Notice, **Exh. 8**, via cell phone to any putative class member whose Notice and Consent sent through U.S. Mail comes back as undeliverable.[6]

**B.**   **U.S. Mail**.

Delivering Notice and Consent via U.S. Mail is the standard, though somewhat antiquated, method of dissemination. Plaintiff contends that in utilizing this method of dissemination, Notice and Consent should be sent to all addresses **Kickin' Chicken** has on file. This putative class is migratory in nature, primarily composed of younger people, a miniscule number of whom own their own homes. In the types of housing that the vast majority of these employees avail themselves, the ever-revolving list of tenants does not lend itself to mail being returned to the post office to be forwarded to a former tenant at their "latest known mailing address." If a former employee initially requested a forwarding order with the U.S. Postal

---

[6] Plaintiff contends that there is a high probability that U.S. mail will never be returned as undeliverable, but also never was received by the Putative Class member. In the *Alshehabi* action, which is almost identical to this action, this Court stated that if, after the forty-five (45) day notice period has expired, Plaintiff can prove these events have occurred, this Court would consider what corrective action, if any, would be needed.

9

Memo in Support of Motion for Conditional Class Certification and to
Authorize Notice to Potential Class Members
C/A: 2:14-cv-03171-PMD

Service, this order expires after (6) months, unless the individual files a request for an additional six (6) months. **Exh**. **9**.[7]

If **Kickin' Chicken** is in possession of more than one (1) address for an employee, it is possible that one (1) of those addresses is a temporary address where the individual may have resided while going to school or temporarily relocating, but the other is more of a permanent address that will effectuate proper delivery of notice.

    **C.**    **Email**.

Many restaurants utilize an online scheduling system called Schedulefly. It is unknown if **Kickin' Chicken** uses this system. If they do, all employees must have an email address to obtain their work schedules. Thus, either **Kickin' Chicken** or Schedulefly would have, at the very least, email addresses for all current employees, if not all former employees. **Exh. 1.** Furthermore, this type of employer routinely solicits applications via Craigslist or other similar sites, wherein applicants would respond via email.[8]

Another district court, within the Fourth Circuit, has recently allowed Notice to be disseminated via email. *Amrhein v. Regency Mgmt. Servs., LLC*, 2014 U.S. Dist. LEXIS 36477 (D. Md. March 20, 2014). In *Amrhein,* the court determined that email was an allowable method of notice, as opposed to telephone communication. The reasoning pivoted on the idea that email communication was not interactive, as a telephone call would be, and would be easier for the Court to regulate its contents. *Id*.

Because almost all email servers have some type of SPAM (Junk Mail) filter, it will be of utmost importance to have the correct "subject line" for the email that is sent. Plaintiff suggests:

---

[7] USPS Mail Forwarding Policy (https://www.usps.com/manage/forward-mail.htm).
[8] Although hand written applications do not always provide an entry for one's email address, if Kickin' Chicken is in possession of an employee's resume, it likely has an email address affixed.

10

Memo in Support of Motion for Conditional Class Certification and to
Authorize Notice to Potential Class Members
C/A: 2:14-cv-03171-PMD

"**Kickin' Chicken** Lawsuit – Please Read."  The text of the email will have what is contained on Email Notice, **Exh**. **7**, with the full notice, **Exh**. **6**, attached to the email.  The email Notice, **Exh**. **7**, is important because many servers at these types of restaurants are students or are otherwise migratory in nature.  Although mailing addresses may change frequently, email addresses tend to last for a long time.  This method of distributing notice has been found by courts to be a safe, reliable, and very unobtrusive method of delivering notice.

        **D**.    **Text Message via Cell Phone**.

If a putative member's Notice and Consent, after being sent via U.S. Mail, is returned as undeliverable, a text message with Reduced Notice should be sent to all known phone numbers for that individual. **Exh**. **8**.  The one constant contact that *these putative members* have is their cell phone number.  This number can be used to send them an electronic text message – no different than an email – giving them the proper notice that they deserve so they can make an informed decision, which is the intended goal of the notice.

The same legal reasoning of using *email* would apply to sending a *text message via cell phone*.  By limiting use of the cell phone numbers to a single text message, the idea of phone communication being interactive is diminished to being the same amount of interaction as an email and as simple to control the content.

The Fourth Circuit recognizes that in some collective action cases, in order to effectuate proper notice, there may arise a special need for disclosure of the telephone numbers of prospective members. *Arevalo v. D.J.'s Underground, Inc*., 2010 U.S. Dist. LEXIS 109193 (D. Md. October 13, 2010).  The special need is present here due to the migratory nature of the putative class members. *Schemkes v. Presidential Limousine,* 2011 U.S. Dist. LEXIS 34050, 12-

Memo in Support of Motion for Conditional Class Certification and to
Authorize Notice to Potential Class Members
C/A: 2:14-cv-03171-PMD

13 (D. Nev. Mar. 10, 2011).[9] *For these putative class members,* Cell phone numbers, as opposed to mailing addresses, are far more likely to have remained constant.

### E.     Communal Bulletin Board.

Additionally, Plaintiff believes that Notice should be posted in a communal area within each **Kickin' Chicken** location. Courts routinely approve the posting of notice on employee bulletin boards and in common employee spaces. *Mendoza v. Ashiya Sushi 5, Inc.*, 2013 U.S. Dist. LEXIS 132777 (S.D.N.Y. Sept. 16, 2013). This court has recently approved of posting Notice on the communal bulletin board within the business establishment.[10] Plaintiff asks that the Notice be laminated and placed, in a manner easily readable, in a communal area where employees generally congregate with an envelope containing Consents. Additionally, Plaintiff requests that Defendants be required, on a daily basis, to check to be sure this Notice has not been ripped down or otherwise defaced. Defendants should also make sure, at the same time, that there are plenty of Consent forms available.

For all of the above means of disseminating notice, Plaintiff would like to reserve the right to publish in both English and Spanish.

## CONCLUSION

For the reasons outlined above, Plaintiff respectfully requests that this court grant its motion for Conditional Certification of the Collective Action and authorize Notice be sent to putative class members.

---

[9] A similar migratory class was addressed in the Ninth Circuit in *Schemkes v. Presidential Limousine,* 2011 U.S. Dist. LEXIS 34050, 12-13 (D. Nev. Mar. 10, 2011). Although Plaintiffs did not request to disseminate notice in any method other than US Mail, the Court decided, *sua sponte,* that due to the fact that most people living in Las Vegas do not stay at the same address for multiple years, email would be a more useful method to provide a more efficient and cost effective notice.

[10] *Blakely v. Berkeley County*, 2:13-cv-01364-PMD.

Memo in Support of Motion for Conditional Class Certification and to
Authorize Notice to Potential Class Members
C/A: 2:14-cv-03171-PMD

                                                                            
Bruce E. Miller (Fed Bar No. 3393)
BRUCE E. MILLER, P.A.
147 Wappoo Creek Drive, Suite 603
Charleston, SC  29412
T: 843.579.7373
F: 843.614.6417
bmiller@brucemillerlaw.com

**ATTORNEYS FOR TYLER MCCOY,**
**on behalf of himself and**
**all others similarly situated**

CHARLESTON, SC

May 22, 2015