IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| TYLER MCCOY, on behalf of himself and all others similarly situated, | ) ) | Civil Action No.: 2:14-CV-3171-PMD |
| Plaintiff, | ) ) ) ) | |
| vs. | ) ) | |
| RP, INC. d/b/a KICKIN' CHICKEN; RPM MT. PLEASANT, INC.; RPM WEST ASHLEY, INC.; RPM JAMES ISLAND, INC.; RPM SUMMERVILLE, INC.; R. DAVID MILLER, individually; WILLIAM G. "CHIP" ROBERTS, III, individually; and ROBERT PERRY, individually, | ) ) ) ) ) ) ) ) ) | **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND TO AUTHORIZE NOTICE TO PUTATIVE CLASS MEMBERS** |
| Defendants. | ) ) ) | |

## I.  **BACKGROUND**

Plaintiff Tyler McCoy ("McCoy") filed this lawsuit on August 7, 2014, alleging violation of the Fair Labor Standards Act, 29 U.S.C. § 201, et. seq. ("FLSA"). A First Amended Complaint was filed on March 25, 2015, properly identifying the current Defendants. A Second Amended Complaint was filed on April 20, 2015. Named as Defendants in the lawsuit are five separate restaurant entities: 1) RP, Inc.; 2) RPM Mt. Pleasant, Inc.; 3) RPM West Ashley, Inc.; 4) RPM James Island, Inc.; and 5) RPM Summerville, Inc., each of which operates a restaurant named Kickin' Chicken.

Also named as Defendants are three individual Defendants:  1) R. David Miller; 2) William G. "Chip" Roberts; and 3) Robert Perry, each of whom is a part owner of the various corporate entities.

1

McCoy was hired on or about November 4, 2013, as a server by RP, Inc., to work at the Kickin' Chicken restaurant on King Street in downtown Charleston. While employed by RP, Inc., McCoy never worked at any other position than server. In addition, McCoy never worked for any of the other corporate Defendants. McCoy's last day of employment with RP, Inc. was on or about April 30, 2014.

McCoy brought this lawsuit on behalf of himself. He has also attempted to bring this lawsuit as an FLSA collective action "on behalf of others similarly situated." When he filed his original Complaint on August 7, 2014, McCoy also attached his own opt-in form stating his desire to participate in the lawsuit. Significantly, although this lawsuit has been pending for ten (10) months, not one single other employee at RP, Inc., where McCoy worked, nor any employee at any of the other four corporate defendants, where McCoy never worked, has joined this lawsuit. Despite this fact, McCoy has now filed a Motion for Conditional Certification and to Authorize Notice to Putative Class Members, seeking conditional certification of "any individual employed at Kickin' Chicken (Downtown Charleston, James Island, Mt. Pleasant, West Ashley or Summerville), at any time since [three years prior to the date of the Order], who at any time was paid an hourly wage rate less than the statutory minimum wage of Seven and 25/100 Dollars ($7.25) per hour and either contributed money to a tip pool or received money from a tip pool." See ECF No. 60-1, Memorandum in Support of Plaintiff's Motion for Conditional Certification and to Authorize Notice to Putative Class Members, at p. 4 (hereinafter "Plaintiff's Memorandum"). For the reasons set forth below, McCoy's Motion should be denied and this matter should be allowed to proceed solely as an individual action in the name of Tyler McCoy.[1]

---

[1] The Court should be aware that early in this litigation, counsel for Defendants broached the possibility that his clients might be willing to consider agreeing to conditional certification of servers at RP, Inc., the only entity for which McCoy worked. Counsel for Plaintiff expressed no

## II.    LEGAL STANDARD

The Fourth Circuit Court of Appeals has not yet adopted a specific approach to apply in determining whether certification of a particular FLSA lawsuit is appropriate. However, South Carolina District Courts, including this Court, have generally adopted a two-step approach. See, e.g., Regan v. City of Charleston, No. 2:13-cv-3046, 2014 WL 3530135 at 2 (D.S.C. July 14, 2014); MacGregor v. Farmers Ins. Exchange, No. 2:10-cv-03088, 2011 WL 2981466 at 2 (D.S.C. July 22, 2011). The first step in this two-stage process is to determine whether the particular lawsuit is appropriate for conditional certification.

At the conditional certification stage, a court must initially determine two things: 1) whether there are other employees who wish to opt-in to the lawsuit; and 2) whether such employees are similarly situated to the named plaintiff. See, e.g., Dybach v. Florida Dept. of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991) (a case cited approvingly in Plaintiff's Memorandum at page 7); Parker v. Rowland Express, Inc., 492 F. Supp.2d 1159 (D. Minn. 2007).

In making this determination, a court reviews the pleadings and affidavits to determine whether the plaintiff has met his burden of showing sufficient evidence to justify granting conditional certification. See Pelcynski v. Orange Lake Country Club, Inc., 284 F.R.D. 364 at 368 (D.S.C. 2012) ("Plaintiffs must show 'some identifiable factual nexus which binds the named plaintiffs and the potential class members together'.... [E]vidence that other similarly situated individuals desire to opt in to the litigation, therefore, is required.... Also, whether the plaintiffs were victims of a common policy or plan that violated the law' is a key factor to

---

interest and declined to pursue this possibility. In light of further research, see Section IIIA, *infra*, it now appears conditional certification of even RP, Inc. is not appropriate in this case.

WCSR 34116399v2

consider."). At this stage, the "determination is made using a fairly lenient standard". Regan, 2014 WL 3530135 at 2. However, while the plaintiff's "burden at this stage is not onerous, neither is it invisible." Songer v. Dillon Resources, 569 F. Supp.2d 703, 706. (N.D. Tex. 2008), citing Parker, *supra*. Nor is it "automatic". See Morales v. Thang Hung Corp., 4:08-2795, 2009 WL 2524601 at 2 (S.D. Tex. Aug. 14, 2009).

Therefore, at the conditional certification stage "a named plaintiff...must proffer some evidence that other similarly situated individuals desire to opt in to the litigation..." Parker, 492 F. Supp. 2d at 1165; and must also show a "reasonable basis for his claim that there are other similar situated employees." MacGregor, 2011 WL 2981466 at 2, quoting Morgan v. Family Dollar Stores, 551 F.2d 1233 (11th Cir. 2008). A plaintiff must demonstrate that he and potential plaintiffs "together were victims of a common policy or plan that violated the law". Regan, 2014 WL 3530135 at 2. "Mere allegations will not suffice; some factual evidence is necessary." MacGregor, *supra*, quoting Bernard Household, Inc., 231 F. Supp.2d 433 (E.D. Va. 2002).

As set forth below, McCoy has not presented sufficient evidence either that: 1) other employees exist who wish to opt in to this lawsuit; or 2) that the employees he proposes to include in this lawsuit are similarly situated to him. Consequently, McCoy's Motion for Conditional Certification should be denied.

### A.    NO EVIDENCE THAT OTHERS WISH TO JOIN THE LAWSUIT

Prior to conditionally certifying a class, and authorizing notice to potential plaintiffs, the court must satisfy itself that there are other similarly situated employees who desire to opt-in to the litigation. See Dybach, 942 F.2d 1562 at 1567 (11th Cir. 1991) (holding that it was necessary for the Court to satisfy itself that there are, in fact, other employees who *desire to opt-in* and who are similarly situated). "[B]efore a conditional-certification motion may be granted, a named

4

plaintiff (or plaintiffs) must proffer some evidence that other similarly situated individuals desire to opt-in to the litigation.  In the absence of such evidence, there would be no basis upon which the court could conclude that the action was an 'appropriate case' for collective-action treatment."  Parker, 492 F. Supp.2d 1159 at 1164-1165.  "A FLSA plaintiff is not entitled to conditional certification simply to seek out others who might wish to join the action."  Id. (citing Mackenzie v. Kindred Hosps. East, LLC, 276 F.Supp.2d 1211, 1220 (M.D. Fla. 2003)).  "Plaintiffs must present information, i.e., more than *speculation* or *bald assertions* by the plaintiffs, that putative class members are interested in joining the suit."  O'Donnell v. Robert Half Intern., Inc., 534 F.Supp.2d 173, 179 (D. Mass. 2008) (emphasis added).

District Courts ruling on conditional certification motions have often cited the showing of interest by potential class members, or lack thereof, as a significant factor in their consideration of whether to conditionally certify a collective action.  A plaintiff's "mere stated belief in the existence of other employees who desire to opt-in is insufficient;" in addition, "unsupported expectations that additional plaintiffs will subsequently come forward" are also insufficient. Davis v. Charoen Pokphand (USA), Inc., 303 F.Supp.2d 1271, 1277 (M.D. Ala. 2004) (citations omitted).  See also Garrison v. Conagra Packaged Food, LLC, No. 4:12-CV-00737, 2013 WL 1247649 (E.D. Ark. Mar. 27, 2013); Simmons v. T-Mobile USA, Inc., No. H-06-1820, 2007 WL 210008 at 9 (S.D. Tex. Jan. 24, 2007) ("[o]thers' interest in joining the litigation is relevant to whether or not to put a defendant employer to the expense and effort of notice to a conditionally certified class of claimants. . .  The Court concludes that a showing is necessary that at least a few similarly situated individuals seek to join the lawsuit"); Rodgers v. CVS Pharm., Inc., No. 8:05-CV770T-23MSS, 2006 WL 752831 at 3 (M.D. Fla. Mar. 23, 2006) ("Certification of a collective action and notice to a potential class is not appropriate to determine *whether* there are

5

others who desire to join the lawsuit. . . [r]ather, a showing that others desire to opt in is required before certification and notice will be authorized by the court") (citations omitted); <u>Hargrove v. Sykes Enters., Inc.</u>, No. CIV 99-110-HA, 1999 WL 1279651 at 4 (D. Or. June 30, 1999) (conditional certification denied where "there is an insufficient basis for inferring that other potential plaintiffs would wish to opt into the proposed class"); <u>Cash v. Conn. Appliances., Inc.</u>, 2 F.Supp.2d 884, 897 (E.D. Tex. 1997) ("a showing that there are other employees of the . . . employer who desire to 'opt in' also must be made before a class can proceed as a FLSA collective action").

"Simply put, a plaintiff must do more than show the mere *existence* of other similarly situated persons, because there is no guarantee that those persons will actually seek to join the lawsuit." <u>Parker</u>, 492 F.Supp.2d at 1165 (emphasis in original). If a plaintiff were required to only show the mere *existence* of other plaintiffs (rather than showing that those potential plaintiffs would actually seek to join the lawsuit), it would:

> render preliminary class certification automatic, as long as the Complaint contains the magic words: 'Other employees similarly situated.' Under this rationale, any plaintiff who is denied overtime pay may file suit under [the] FLSA and, as long as her complaint is well-pled, receive preliminary class certification and send court-approved notice forms to every . . . employee. This is, at best, an inefficient and over-broad application of the opt-in system, and at worst it places a substantial and expensive burden on a defendant . . . More importantly, automatic preliminary class certification is at odds with the Supreme Court's recommendation to 'ascertain the contours of the action at the outset.'

<u>Id.</u> (citing <u>Smith v. Sovereign Bancorp, Inc.</u>, No. Civ. A. 03-2420, 2003 WL 22701017 at 2 (E.D. Pa. Nov. 13, 2003)).

While the Fourth Circuit Court of Appeals has not ruled with regard to this specific issue, two South Carolina District Courts have addressed it. In <u>Simons v. Payor's, Inc.</u>, No. 3:11-cv-

6

0792, 2011 WL 3158724 (D.S.C. July 26, 2011), Judge Currie declined to impose this requirement under the facts of that case, instead denying conditional certification on other grounds. However, in <u>Pelczynski v. Orange Lake Country Club</u>, 284 F.R.D. 364 (D.S.C. 2012), Judge Harwell recognized the validity of this requirement. In that case, four plaintiffs sought to certify a class of timeshare salesmen, alleging that their common employer did not pay them overtime required by the FLSA. In analyzing the appropriate standard which should be utilized in deciding the motion for conditional certification, Judge Harwell noted that the plaintiffs needed to show an "identifiable factual nexus" binding the potential class members to the plaintiffs. <u>Id</u>. at 367-368. According to the Court, "*evidence* that other similarly situated individuals desire to opt in to the litigation is, therefore, *required*." <u>Id</u>. at 368 (emphasis added).

The foregoing analysis is fatal to Plaintiff's Motion for Conditional Certification. "In the absence of at least *some* evidence indicating that others will opt in to this lawsuit, the Court [cannot perceive any] basis to conclude that this is an 'appropriate case' for collective-action status." <u>Parker</u>, 492 F.Supp.2d at 1165-1166. Here, Plaintiff has failed to provide *any* evidence indicating that others will opt in to this lawsuit.

The fact that Plaintiff has presented no evidence that anyone other than himself is interested in this lawsuit is particularly noteworthy given how long it has been pending and the amount of publicity associated with this and other FLSA restaurant cases in the Charleston area. This lawsuit was filed on August 7, 2014. Since that time, Plaintiff's counsel has actively sought to solicit putative class members for this and other cases. Set forth below is a portion of Plaintiff's law firm's website devoted to "Tipped Employees":

> As a tipped employee, have you been required to share, or "tip-out" to ownership, managers, or "back-of-the-house" employees? Did you have to pay for such things as "breakage?" If this occurred within the last three years, you should <u>Contact Us</u> today. You may be losing damages daily. With thirty years of experience, Bruce Miller, a **Certified Specialist in**

**Employment & Labor Law**, has fought for the rights of people just like you. He will aggressively seek recovery, in or out of court, not only in South Carolina, but throughout the Southeast, for all the damages to which you are entitled.

The federal law, the Fair Labor Standards Act ("FLSA"), requires employers to pay most of their employees the minimum wage of $7.25 per hour. In service industries, such as a restaurant or other places where employees "regularly and customarily" receive tips, the employer may pay these employees $2.13 per hour by taking a "Tip Credit." If the employer takes this "Tip Credit," the employer must not require the tipped employee to share their tips with other employees who are not regularly and customarily tipped. As an example, a restaurant cannot require, or even permit, a server to pool their tips with ownership for "breakage," with managers, or back-of-the-house employees such as cooks, dishwashers, or janitors. If the restaurant does this, the entire Tip Pool is tainted.

The employee is entitled to Actual Damages by receiving minimum wage for all hours worked possibly for up to three years. The employee is most probably also entitled to Liquidated Damages of an equal amount, and in addition, the restaurant must pay the server's attorneys' fees and costs.

If a server averaged 40 hours per week for 3 years, they may be entitled to the following:

| | |
|---|---|
| **Actual Damages** | $30,712.00 |
| **Liquidated Damages** | $30,712.00 |
| **Attorneys Fees & Costs** | $ All |
| | |
| **Total Damages** | $61,424.00 |

Do not delay.  Contact Us now for a no cost - no obligation telephone call or consult.

See http://www.brucemillerlaw.com/tipped_employees.php (emphasis in original).

In addition to Plaintiff's counsel's law firm website, Plaintiff's counsel's law firm maintains Facebook and Twitter accounts. The following is a posting which was initiated from the firm's Twitter account, and which remains online presently:

8



> **Bruce Miller**
> @BruceMillerLaw
> Follow
>
> #TippedEmployees 2 MB/FLO restaurants face new class actions lawsuits over illegal tip pools. Call for free consult. myrtlebeachonline.com/2014/09/28/450…
>
> 8:15 AM - 29 Sep 2014

See Twitter handle: @BruceMillerLaw.

Similarly, the Plaintiff's counsel's law firm's Facebook account published the following post, stating that he "filed Class-Actions against Kickin' Chicken in Charleston" among other restaurants:

> **Bruce E Miller, PA**
> August 27, 2014
>
> In our Class-Action against Hymans (mentioned in the article), 63 people have joined. Hymans could be facing damages over $1,000,000.00! We also have filed Class-Actions against Kickin Chicken in Charleston & King Kong Sushi in Myrtle Beach. If you or a friend have been a "Tipped Employee" at anytime during the last 3 years, contact us for a free consultation to determine if you have been paid properly.

> **Charleston restaurants violate labor laws**
> Restaurant workers across the Charleston area are routinely losing out on their wages by illegal management tactics that include forcing cooks to work off the clock, doctoring official time cards, withholding overtime pay and skimming...
> POSTANDCOURIER.COM
>
> Like Comment Share

See https://www.facebook.com/BruceMillerLaw. After filing against another local restaurant, Plaintiff's counsel's law firm again took to Facebook, posting news articles regarding the same:

WCSR 34116399v2



Bruce E Miller, PA
December 11, 2014

#TippedEmployees from Hank's Seafood filed a class action recently that is the same as Hymans Seafood & the other four class actions we are handling. The case is discussed in an article in the Post & Courier. If you, a family member, or friend have worked in #FandB as a tipped employee at anytime during the last three years, please contact us for a free consult to determine if you are entitled to any unpaid wages because of an illegal tip pool. #brucemillerlaw



**Former server files wage complaint against Hank's**

The attorney currently representing 77 employees who contend they were cheated out of their wages at Hyman's Seafood has filed a separate suit against Hank's Seafood Restaurant for allegedly operating an illegal tip pool.

POSTANDCOURIER.COM

Like · Comment · Share

See https://www.facebook.com/BruceMillerLaw.

Looking beyond Plaintiff's counsel's online presence, Plaintiff has also had the benefit of significant third-party press and publicity. On August 26, 2014, *The Post and Courier* published an article online titled "Charleston restaurants violate labor laws." See http://www.postandcourier.com/article/20140826/PC1206/140829529. The following day, the same article was republished in hard copy, appearing on the entire front page of Section D in *The Post and Courier* (both above and below the fold), with the caption: "Worker pay under fire: Labor Department finding wage violations at area restaurants." See Exhibit M (collectively "Post and Courier Articles"). The Post and Courier Articles prominently reference this litigation, stating: "Earlier this month [Bruce Miller] brought suit against Kickin' Chicken, alleging that the restaurant failed to pay overtime wages and forced its servers to share their tips with the kitchen

10

staff.  Kickin' Chicken's attorney did not return a call seeking comment."  Id.   That same day, the author of the article made the following post on Twitter, with a link to the full text of the article:



See Twitter handle: @hannaraskin. The author, Hanna Raskin, presently has 5,084 "followers" on Twitter; her Twitter post is publicly visible, and not limited only to her followers.  Notably, Plaintiff's counsel (@BruceMillerLaw) follows @hannaraskin on Twitter, marked the Tweet as a "favorite," and also publicly retweeted it to all of @BruceMillerLaw's followers.

        In addition, less one month later, on September 28, 2014, *The Sun News* published an article titled "Tipping Point: Myrtle Beach area restaurants face lawsuits over alleged illegal tip pools".  See http://www.myrtlebeachonline.com/news/local/article16683800.html#storylink=cpy ("Sun News Article").   The Sun News Article specifically references the present litigation, stating:  "Miller — a certified specialist in employment and labor law — also has sued The Kickin' Chicken and Hyman's Seafood restaurants in Charleston . . ."  Id.  (emphasis added). Plaintiff's counsel specifically linked the Sun Times Article to the @BruceMillerLaw Twitter post, referenced *supra*, and also publicly re-posted the article on Facebook:



**Bruce E Miller, PA**
September 29, 2014

Our two recent filings against Myrtle Beach & Florence restaurants are discussed in an article in the Myrtle Beach Sun News. If you, a family member, or friend have worked as a tipped employee at anytime during the last three years, please contact us for a free consult to determine if you are entitled to any unpaid wages because of an illegal tip pool.

**Tipping point: Myrtle Beach area restaurants face lawsuits over alleged illegal tip pools |...**

Lawsuits over illegal tip pools in the restaurant business, which have been filed nationwide, have arrived in the Myrtle Beach area.

MYRTLEBEACHONLINE.COM

Like · Comment · Share

See https://www.facebook.com/BruceMillerLaw.

Given no controlling precedent, this Court will therefore have to determine, in its sole discretion, whether, under the facts of this particular case, Plaintiff will be allowed to conditionally certify a large group of employees employed by five separate corporate defendants, despite no evidence of interest in pursuing this matter by anyone other than the Plaintiff himself.

In D'Anna v. M/A-COM, Inc., 903 F. Supp. 889, 894 (D. Md. 1995) (citations omitted), the court noted why conditional certification is not appropriate in a case like the present one:

> "As a matter of sound case management, a Court should, before offering [to assist plaintiff in locating additional plaintiffs] make a preliminary inquiry as to whether a manageable class exists...The courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation..." Furthermore, an employer should not be unduly burdened by a frivolous fishing expedition conducted by plaintiff at employer's expense.

Moreover, "an FLSA plaintiff is not entitled to conditional certification simply to seek out others who might wish to join." Parker, 492 F. Supp.2d at 1166. "Certification of a collective action and notice to a potential class is not appropriate to determine whether there are others who desire to join the lawsuit." White v. Kepar, Inc., No. 6:05-cv-1317, 2006 WL 1722348 at 3 (M.D. Fla.

12

June 20, 2006).  Given the significant publicity, online and otherwise, many present and former employees of the various corporate Defendants are undoubtedly aware of the pending lawsuit. However, no current or former employee of either the restaurant where Plaintiff worked, or any employee at any of the other four corporate Defendants, has shown the slightest interest in the litigation by joining or opting in to this action.  The Plaintiff stands alone.  This fact strongly militates in favor of the Defendants' position to restrict the Plaintiff's case to Plaintiff only.[2]

## B.    NO EVIDENCE THAT PROPOSED CLASS IS SIMILARLY SITUATED

As set forth in part II A, *supra*, despite the passing of almost ten months, Plaintiff has not identified a single plaintiff, other than himself, who is interested in participating in this collective action.  Consequently, Defendants maintain that it is not even necessary to reach the "similarly situated" analysis in order to determine whether conditional certification is appropriate; for it is not.  Regardless, as set forth below, the "similarly situated" analysis of the facts of this case makes clear that Plaintiff's Motion for Conditional Certification should be denied for failure to establish this requirement, as well.

1.  Similarly Situated Standard

"Courts should not exercise their discretion to facilitate notice unless '[t]he facts and the circumstances of the case illustrate' that a class of 'similarly situated' aggrieved employees exists."  MacGregor, 2011 WL 2981466 at 2 (quoting Hoffmann–La Roche, Inc., 493 U.S. 165, 170, 110 S. Ct. 482 (1989).  Plaintiff has the burden of establishing that the proposed class is similarly situated.  At the conditional certification stage, Plaintiff must set forth admissible

---

[2] If this Court is inclined to find that the existence of the one (1) named Plaintiff meets the threshold for the conditional certification, such conditional certification should definitely be limited to the single restaurant location at which Plaintiff was employed (RP, Inc.), and should be limited to those in the same position as Plaintiff (servers only).  For a detailed analysis of the "similarly situated" requirement, see Part B, *infra.*

13

evidence of facts which establish a reasonable basis for his claim that others are similarly situated. See MacGregor, 2011 WL 2981466 at 2. Plaintiff is not able to meet this burden by relying on the allegations in his pleadings alone. Plaintiff is required to support his allegations with other evidence such as affidavits or declarations. Camper v. Home Quality Management Inc., 200 F.R.D. 516, 519-520 (D.Md. 2000) ("Mere allegations in the complaint are not sufficient; some factual showing by affidavit or otherwise must be made."); see also, Syrja v. Westat, Inc., 756 F.Supp.2d 682, 688 (D.Md. 2010). Conditional certification must be denied where Plaintiff only provides "meager factual support for [his] vague allegations," see D'Anna, 903 F.Supp. at 894, or only offers "conclusory affidavits stating [his] beliefs that others ha[ve] been subjected to similar discrimination." H & R Block, Ltd. v. Housden, 186 F.R.D. 399, 400 (E.D.Tex. 1999) (denying request for court facilitated notice based on insufficient evidence that proposed class was similarly situated).

> The District Court of South Carolina has explained that members of a proposed class are
>
> similarly situated if they 'were victims of a common policy or plan that violated the law.' Purdham, 629 F.Supp.2d at 549 (citing Choimbol v. Fairfield Resorts, Inc., 475 F.Supp.2d 557, 563 (E.D.Va.2006); see also Marroquin v. Canales, 236 F.R.D. 257, 259–60 (D.Md.2006); D'Anna, 903 F.Supp. at 893 (Putative plaintiffs are "similarly situated [if] they were victims of a single decision, policy, or plan.").

MacGregor, 2011 WL 2981466 at 2 -3.

2. Employees of the various corporate defendants in this case are not similarly situated.

Applying the "similarly situated" standard to the facts of this case, it is evident that Plaintiff has failed to establish sufficient evidence of a "factual nexus which binds the named plaintiff[] and the potential class members together." See MacGregor, 2011 WL 2981466 at 2 (citing Heagney v. Eur. Am. Bank, 122 F.R.D. 125, 127 (4th Cir. 1988); Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1260 (11th Cir. 2008)). Here, Plaintiff has failed to offer any

14

*admissible* evidence to support a finding that the proposed class is similarly situated. In support

of his contention that the purported "class" is similarly situated, Plaintiff offers only his own

affidavit. See ECF No. 60-5, Affidavit of Tyler McCoy. His affidavit does not meet the

additional evidence requirement as it consists of speculative and conclusory statements that

merely express the affiant's beliefs with regard to other employees. Most of the information

contained in Plaintiff's affidavit relates <u>solely</u> to his own experience working for RP Inc. at the

Kickin' Chicken restaurant in downtown Charleston. The only two (2) sentences of any

relevance to the "similarly situated" analysis, as it applies to the other four corporate defendants,

are found in paragraphs 9 and 10 of the Plaintiff's affidavit, both of which lack a proper

foundation and contain only inadmissible hearsay.[3]  Each sentence begins with the language: "I

---

[3] Courts nationwide have considered this issue and held that affidavits in support of conditional certification should be based on personal knowledge, and not based <u>solely</u> on hearsay. Thus, hearsay statements are inadmissible and cannot be considered in connection with a § 216(b) motion. See Soutter v. Equifax Ino. Services LLC, 299 F.R.D. 126 (E.D. Va. 2014) (citing with approval cases that held hearsay in affidavits unreliable and, thus, inadmissible at the conditional certification stage); Colson v. Avnet, Inc., 687 F.Supp.2d 914, 928 (D. Ariz. 2010) (holding that plaintiff's declarations were based on hearsay and were insufficient to support conditional certification); Kuznyetsov v. West Penn Allegheny Health Sys., No. 09-CV-379, 2009 WL 1515175 (W.D. Pa. June 1, 2009) (holding that affidavits containing hearsay will not be considered in the conditional certification "[s]ince the information contained in the affirmations relating to 'other employees' is not based on personal knowledge, the evidence is inadmissible hearsay"); Dreyer v. Altchem Environ. Svcs., Inc., No. 06-2393, 2007 WL 7186177 at 7 (D.N.J. 2007) (holding that "courts will not consider affidavits that are not founded on personal knowledge"); Ulysse v. Divosta Bldg. Corp., No. 06-80338, 2006 WL 3618449 (S.D.Fla. 2006) (disregarding hearsay in plaintiff's affidavit where it contained conclusory statements about what someone "told" him); Harrison v. McDonald's Corp., 411 F.Supp. 862, 865-866 (S.D. Ohio 2005) (striking portion of employee's affidavit on grounds that "hearsay statements cannot be considered in connection with a Plaintiff's § 216(b) motion for the purpose of determining whether other employees are similarly situated"); Richards v. Comp. Sciences Corp., No. 3:03-CV-630, 2004 WL 3517039 (D.Conn. 2004) (striking hearsay statements in affidavits in support of a § 216(b) motion because "hearsay and secondhand information do not constitute personal knowledge"); Clark v. Dollar General Corp., No. 3:00-0729, 2001 WL 878887 at 2 (M.D. Tenn. May 23, 2001) (striking all parts of affidavits that were not based on personal knowledge citing Rule 602).

15

have been told" yet fail to even identify by name the person(s) who allegedly told Plaintiff the information.   Such statements are classic hearsay.

Other than these two sentences, Plaintiff has presented absolutely no evidence regarding any of the other Defendant employers and corresponding restaurant locations for the Court's consideration.   This level of support (or lack thereof) is commensurate with that found by the court to be insufficient in <u>Dinkel v. MedStar Health, Inc.</u>, 880 F.Supp.2d 49, 56 (D.D.C. 2012). In <u>Dinkel</u>, the Plaintiffs, who worked for two (2) departments at one hospital, sought to certify the employees of nine (9) hospitals under common ownership.   After reviewing the evidence proffered by Plaintiffs, the court held that

> Despite the *breadth of the proposed action*, Plaintiffs offer a decidedly narrow factual showing . . .   Plaintiffs do not present any evidence that there was a similar practice at departments other than the two in which they work or worked.
>
> Plaintiffs try to make an end-run around the requisite factual showing simply by averring that "[t]hrough their personal observations of, and discussions with, their co-workers during the relevant period, Plaintiffs believe that Defendants' Hospital Employees were subjected to the same . . . policies and practices and [were] affected the same way by them." These unsupported assertions are made in such a conclusory fashion as to be devoid of meaning. Plaintiffs' declarations lack the sort of factual content that would allow the Court to conclude that Plaintiffs have any personal knowledge of practices or policies outside their specific departments and, if so, which departments.

<u>Dinkel,</u> *supra.*, 880 F.Supp.2d at 56 (internal citations omitted)(emphasis added).

Plaintiff has thus failed to meet his burden of establishing that the proposed class members are "similarly situated."   This is not surprising however since the admissible evidence before the Court establishes that, on the one issue relevant to this case – tip pools – the employees of the various restaurants are not "similarly situated."   In this regard,

    (1)    the evidence establishes that the members of the proposed class work for  5 different corporate employers;

(2)       the evidence establishes that the members of the proposed class work at 5

different locations;

(3)       the evidence establishes that there is no common policy or plan regarding tip

pools at the 5 different restaurants;

(4)       the evidence establishes that the general manager of each restaurant controlled

whether or not there was a tip pool policy and, if there was one, what its

parameters would be.

i.       Different Employers and Locations

The class sought to be certified by Mr. McCoy includes employees of five (5) distinct corporate entities who worked at five (5) different locations across Charleston County and Dorchester County, each of which has its own general manager to whom its employees reported and who alone determined policies regarding tip pools, or tip sharing, if any. See collectively, Exhibit A (Affidavit of John Fischer); Exhibit B (Affidavit of Perry Freeman); Exhibit C (Affidavit of Tim Uecker); Exhibit D (Affidavit of Brett Evans); Exhibit E (Affidavit of Ryan Wheatley); Exhibit F (Affidavit of Jamie Heron); and Exhibit G (Affidavit of Theresa Miller).

Defendant RP, Inc. owns the Kickin' Chicken in downtown Charleston and Mr. McCoy received his paycheck from RP, Inc. See RSI Client Agreement and Authorization to Credit/Debit Account for RP, Inc. attached hereto as Exhibit H.  Defendant RPM Mt. Pleasant, Inc. owns the restaurant in Mt. Pleasant, and all employees of the Mt. Pleasant restaurant receive a paycheck from RPM Mt. Pleasant, Inc.  See RSI Client Agreement and Authorization to Credit/Debit Account for RPM Mt. Pleasant, Inc. attached hereto as Exhibit I.    Defendant RPM West Ashley, Inc. owns the restaurant in West Ashley, and all employees of the West Ashley restaurant receive a paycheck from RPM West Ashley, Inc.  See RSI Client Agreement and

Authorization to Credit/Debit Account for RPM West Ashley, Inc. attached hereto as <u>Exhibit J</u>. Defendant RPM James Island, Inc. owns the restaurant on James Island, and all employees of the James Island restaurant receive a paycheck from RPM James Island, Inc. <u>See</u> RSI Client Agreement and Authorization to Credit/Debit Account for RPM James Island, Inc. attached hereto as <u>Exhibit K</u>.    Defendant RPM Summerville, Inc. owns the restaurant in Summerville, and all employees of the Summerville restaurant receive a paycheck from RPM Summerville, Inc.    <u>See</u> RSI Client Agreement and Authorization to Credit/Debit Account for RPM Summerville, Inc. attached hereto as <u>Exhibit L</u>.

Each of the Defendant corporations is separately organized pursuant to the laws of the State of South Carolina and is registered with the South Carolina Secretary of State. <u>See</u> South Carolina Secretary of State, Corporation Search available at <u>www.scsos.com</u>.    There is no allegation, nor is there evidence, that any corporate formalities have been disregarded. Significantly, Plaintiff only worked for one of the Defendants, RP, Inc., and only worked at RP's King Street restaurant.    He never worked for any of the other four (4) corporations or at any of the other four (4) locations. <u>See</u> <u>collectively</u>, <u>Exhibits A-G</u>, Affidavits of Fischer, Freeman, Uecker, Evans, Wheatley, Heron, and Miller.

Plaintiff contends that the proposed class members "need only be employees of the same restaurant enterprise and be alleging the same type of FLSA violation" and cites <u>Fasanelli v. Heartland Brewery, Inc.</u>, 516 F. Supp.2d 317 (S.D. N.Y. 2007).  <u>See</u> Plaintiff's Memorandum at p. 5.  However, the Plaintiff fails to inform the Court as to the depth of evidence presented by the plaintiff in <u>Fasanelli</u> in support of the motion for conditional certification in that case. Specifically, in <u>Fasanelli</u>, the plaintiff himself had actually *worked at* five of the six restaurants at issue, unlike here where Plaintiff has only worked at one.  In addition, there were 18 opt-in

plaintiffs, and plaintiff provided nine (9) affidavits in support of his motion.[4]  Plaintiff also cites Schear v. Food Scope America, Inc., 297 F.R.D. 114 (S.D.N.Y. 2014) for the proposition that restaurant employees with varying job descriptions "can be in the same class for the purposes of conditional certification."  Plaintiff's Memorandum, p. 5.  Defendants do not dispute that a different job title alone does not make inclusion in a class inappropriate.  However, the essential underlying element – a finding that the proposed class members were subject to a common policy or plan – is still required.  Schear, *supra.*, at 121 (plaintiffs must show that "they and potential opt-in plaintiffs were victims of a common policy or plan that violated the law").  In this regard, the underlying factual evidence that supported conditional certification in Schear differs considerably from the case at hand.  For example, Schear was brought by seven (7) plaintiffs, not just one; involved *one* restaurant location, not five; and involved the application of one common policy, not various different ones.

In contrast, the "class" that Plaintiff has asked the Court to certify includes employees of five (5) different corporate entities, who worked at five (5) different locations (each with its own general manager), who were paid by five (5) different companies, and as set forth below, who were subject to five (5) different policies regarding tip pooling or sharing.

ii.    No Common Policy or Plan

The presence of a common policy or plan is a core component of the "similarly situated" analysis.  Conditional certification should be denied when there is no evidence of a uniform corporate policy.  See, e.g., Syrja, 756 F.Supp.2d at 687-688 (denying conditional certification where no evidence of a uniform policy and resolution as class would be inefficient); Laroque v.

---

[4] It is unclear why Plaintiff cites Ruiz v. Monterey of Lusby, Inc., No. DKC 13-3792, 2014 U.S. Dist. Lexis 61791 (D.Md. May 5, 2014).  In Ruiz, Plaintiff's motion for conditional certification was unopposed by the defendants.

Domino's Pizza, LLC, 557 F. Supp.2d 346 (E.D.N.Y. 2008) (denying conditional certification as to other restaurant locations where the named plaintiffs never worked at the other locations and presented only contested hearsay statements found to be insufficient to show employees at other locations who worked under different managers were similarly situated); Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358, 363 (M.D.Ala.1999)(conditional certification denied as to other restaurant locations where there was no evidence of a corporate wide policy or practice, and members of the proposed class "worked at different restaurants, in different states, for different managers, and, most likely, in quite different working conditions"); Ray v. Motel 6 Operating, Ltd. Partnership, No. 3-95-828, 1996 WL 938231 at 4-5  (D.Minn. 1996) (conditional certification denied where no uniform policy and resolution as class would be inefficient).

Here, no common policy or plan exists that affects the purported class. See collectively, Exhibits A-G, Affidavits of Fischer, Freeman, Uecker, Evans, Wheatley, Heron and Miller. The class which Plaintiff seeks to conditionally certify includes certain employees from five (5) different restaurants, each of which is owned by a distinct corporate entity.   Plaintiff only worked for one of the five corporations, RP, Inc., and therefore his personal knowledge is limited to that location. As discussed fully in section II A, *supra*, no other interested plaintiffs have been identified; further, no other employee affidavits have been offered by Plaintiff.

Specifically, and significantly, the evidence shows that the Summerville restaurant, owned and operated by Defendant RPM Summerville, Inc., never maintained a tip pool or participated in any other form of tip sharing.  See Exhibit F, Heron Affidavit, paragraph 4; Exhibit C, Uecker Affidavit, paragraph 8.  In addition, the Mount Pleasant restaurant, owned by RPM Mt. Pleasant, Inc., did not have a mandatory tip pool or tip sharing policy; instead, servers, if they choose to do so, could contribute 1% of their food sales in excess of $200 per shift to the

kitchen closers. <u>See</u> <u>Exhibit A</u>, Fischer Affidavit, paragraph 12; <u>Exhibit B</u>, Freeman Affidavit, paragraph 4; <u>Exhibit C</u>, Uecker Affidavit, paragraph 4; <u>Exhibit G</u>, Miller Affidavit, paragraph 7. At the James Island restaurant, owned by RPM James Island, Inc., the tip pool policy provided that servers would, at the conclusion of their shift, contribute 2% of any food sales in excess of $200 to the kitchen closers. If their food sales did not exceed $200, no contribution would be made. In addition, if the servers were unsatisfied with the performance of the kitchen closer, they were not required to contribute. <u>See</u> <u>Exhibit A</u>, Fischer Affidavit, paragraph 9; <u>Exhibit D</u>, Evans Affidavit, paragraph 4; <u>Exhibit G</u>, Miller Affidavit, paragraph 4. At the West Ashley restaurant, owned by RPM West Ashley, Inc., servers would, at the conclusion of their shift, contribute 2% of their food sales (regardless of the amount), 2/3 of which would be distributed to kitchen closers and 1/3 to food runners/expos; however if the servers were unsatisfied with the performance of the kitchen closers or food runners/expos, they were not required to contribute. At West Ashley, servers would also contribute two percent (2%) of alcohol sales over $100 to the bartenders. This was the only restaurant at which bartenders were included in any tip sharing. <u>See</u> <u>Exhibit E</u>, Wheatley Affidavit, paragraph 4. Therefore, it has been established that all four of these restaurants, Summerville, Mt. Pleasant, James Island and West Ashley, had distinct and unique procedures, established by their respective general managers, for the handling of tip pools and/or tip sharing.

The policy at the King Street restaurant, where Plaintiff worked, was even different. There, at the close of their shift, servers contributed 2% of their food sales to the kitchen closers; however if servers were unsatisfied with the performance of the kitchen closer, they were not required to contribute. In his Affidavit, McCoy maintains that the two percent (2%) was split

between the closers and bartenders. That statement is not accurate. See Exhibits A and B, Affidavits of Fischer and Freeman.

Apparently, the only case Plaintiff could find to support his position, that this very broad class is similarly situated enough to be certified, is from a District Court in the Southern District of New York, Capsolas v. Pasta Resources, Inc., No. Civ. 5595, 2011 WL 1770827 (S.D.N.Y. May 9, 2011); however, it too is distinguishable. In Capsolas, there were eleven plaintiffs who worked at five of the defendant's eight restaurants, so nearly two-thirds of the restaurants were represented, and some had 2 or 3 representative plaintiffs; whereas here, there is one plaintiff who worked at one (out of a total of five) restaurants. In addition, the plaintiffs in Capsolas submitted eleven affidavits in support of the motion for conditional certification; here, there is but one. Additionally, the affidavits relied on by the Southern District of New York contained hearsay, which may have been allowed in New York, but, as addressed more fully in footnote 3, *supra.*, is generally inadmissible in most all other jurisdictions.

3. Where individualized determinations are required, the goal of efficiency is not served.

Plaintiff attempts to skirt the common policy requirement by citing to cases that use the term "manageably similar." See Plaintiff's Memorandum, p. 4 (citing McLaurin v. Prestage Foods, Inc., 271 F.R.D. 465 (E.D.N.C. 2010) and De Luna-Guerrero v. North Carolina Grower's Ass'n, Inc., 338 F.Supp.2d 649 (E.D.N.C. 2004)). However, not only do common policies exist in both of these cases, so that individualized determinations are not necessary, but these cases are readily distinguishable on their facts from the case at hand.

McLaurin involved the certification of a very narrow class of turkey processing plant line workers at one plant location, working for one employer. The Court in McLaurin was not called upon to address whether the employees of multiple companies, at multiple locations, with

22

varying policies, and different supervisors would qualify as similarly situated. Likewise, De Luna-Guerrero, is also distinguishable. In De Luna-Guerrero, there was *one reimbursement policy* at issue that affected the compensation of proposed class members – farm workers for whom defendants had obtained a work visa. 338 F. Supp.2d at 654.

Moreover, the origin of the "manageably similar" language, to which Plaintiff refers, specifically relates to the goal of judicial efficiency. "If plaintiffs demonstrate that they are sufficiently similar, increased efficiency is likely to result from collective action certification. If individualized determinations are likely to predominate, collective action will hinder, rather than promote efficient case management, and thus notice should not be granted."
MacGregor, 2011 WL 2981466 at 2.

In the present case, not only would each individual employee's compensation need to be specifically analyzed, the framework of the analysis would vary based upon which of the five (5) corporations employed the individual and at which restaurant location he or she worked, because each corporation maintained a different policy relating to tip pools or the sharing of tips. The resolution of a conditional action that included numerous employees of five (5) different corporations with five (5) different polices and multiple general managers would be cumbersome, unmanageable and inefficient. See Pelcynski, 284 F.R.D. at 369 (D.S.C. 2012)(denying conditional certification based in part on the fact that individualized assessment would cause "manageability problems"); Purdham v. Fairfax County Public Schools, 629 F.Supp.2d 544, 552 (E.D.Va. 2009) (denying conditional certification where the "Court [would] not be able to efficiently adjudicate multiple claims in the Plaintiff's proposed class" due to the necessity of making individualized factual determination for each employee); England v. New Century Fin. Corp., 370 F.Supp.2d 504, 511 (M.D.La. 2005) (finding conditional certification

23

inappropriate where adjudication of a collective action would have required factual inquiries into employment relationships involving different managers at different geographic locations, and where the court concluded that a finding of liability at one location would not necessarily lead to a finding of liability at another location); Syrja, 756 F.Supp.2d 690, 688 ("this case—in marked contrast to one involving a group of employees who all work in a single location, in similar positions, under a single management structure—is simply not the type of case that lends itself to efficient resolution on a classwide basis" as it would involve "an unmanageable assortment of individualized factual inquiries.")

In short, the "class" proposed by Plaintiff in this case is not similarly situated, for the reasons set forth above.  Moreover, certifying the "class" would not lead to an efficient resolution due to the individual factual determinations that would be necessary.  Consequently, Plaintiff's Motion for Conditional Certification should be denied.

## III.    PLAINTIFF'S REQUEST FOR NOTICE TO POTENTIAL CLASS MEMBERS

In Hoffman-LaRoche, Inc. v. Sperling,  493 U.S. 165, 169, 110 S. Ct. 482 (1989) the Supreme Court held that "district courts have discretion in appropriate cases to implement... § 216(b) ... by facilitating notice to facilitating notice to potential plaintiffs." "The relevant inquiry then is not whether [a district] court has discretion to facilitate notice, but whether this is an appropriate case in which to exercise that discretion". Camper, 200 F.R.D. at 519.  In this regard, "(t)he plaintiff has the burden of demonstrating that notice is appropriate." D'Anna, 903 F. Supp. at 894.

For the reasons set forth above, Defendants do not believe this case is appropriate for conditional certification of any of the Defendant restaurants and, therefore, no Notice should be sent out.  If, however, the Court permits conditional certification of any of the restaurants,

24

Defendants respond to Section II of Plaintiff's Memorandum (page 7-12) and Plaintiff's proposed Notice (Exhibits 6-9) as follows:

A.   **PLAINTIFF'S REQUESTED NOTICE**

1.   Defense counsel has previously informed Plaintiff's counsel that Defendants would utilize Simpluris as a Third Party Administrator (TPA) to send out any Court approved notices. Defendants have agreed to pay all fees and costs of the TPA. Defendants would agree to provide the TPA, within ten (10) business days of the granting of any Conditional Certification Order, the following information:

        a.      employee names
        b.      last known address
        c.      last known e-mail address

Defendants would not agree to provide this information to counsel for Plaintiff. Defendants would oppose providing this information to counsel for Plaintiff because there is no legitimate reason for counsel to obtain such information as personal addresses, e-mail addresses or phone numbers. The only real reason Plaintiff's counsel would want this information would be so that he or someone acting on his behalf could contact those individuals. However, any such contact would be improper both during the notice period and thereafter.

Obviously, contact during the notice period would undermine the purpose of a neutral court sanctioned notice, and is therefore prohibited. Moreover, contact after the notice period expires with individuals who do not opt in would also be improper. Again, the only real reason for such contact would be to solicit those individuals to possibly initiate additional litigation. However, Plaintiff's counsel could not represent any such individual since a conflict of interest would exist between representing the certified class and representing any subsequent individual(s)

WCSR 34116399v2

Of course, for those individuals who might opt in, such information would be relevant for contact purposes and could be obtained on the opt in form.

2.    Defendants would agree to authorizing the mailing by the TPA of any Court approved Notice and Consent to last known addresses.

3.    If the mailing sent out by the TPA is returned as undeliverable, Defendants would agree to authorizing the e-mailing by the TPA of any Court approved Notice and Consent to last known e-mail addresses.

4.    Defendants would not agree to the posting of a laminated notice.

5.    Defendants would not agree to sending a text message of a Reduced Notice via cell phone.

**B.    U.S. MAIL**

Defendants would agree to authorizing the TPA to mail a Court approved Notice and Consent to the last known address contained in their records. For current employees, the last known address will presumably be current, since W-2 forms are sent to that address and Defendants would therefore know if the address in question is not current. For former employees, the last known address would have been the address to which last paychecks would have been mailed and last W-2 forms sent. Again, Defendants would know if the address in question was not correct.

Requiring Defendants to search all records of each individual to see if a particular individual provided more than one physical or e-mail address would be extremely burdensome and unless evidence subsequently existed that both the letter was returned and the e-mail "bounced back" as undeliverable, totally unnecessary. Moreover, sending multiple copies of the Notice could be confusing to the recipients.

## C.    E-MAIL AND TEXT MESSAGE VIA CELL PHONE

1)  In the event that the mailing sent by the TPA is returned as "undeliverable", Defendants would agree to authorizing the TPA to e-mail (in PDF format) the exact same Notice that was mailed.  As far as the subject line, it would agree to language stating "Notice of Fair Labor Standards Lawsuit."  As far as the content of the email is concerned, it would agree to language stating "Attached please find a Notice of a Fair Labor Standards Lawsuit which you should read as it may affect your rights."

2)  Defendants would not agree to authorizing the TPA to send a text message via cell phone.  As stated above, in the event the mailing sent by the TPA is returned undeliverable. Defendants would agree to authorizing the TPA to email the exact same notice that was mailed. In those circumstances, because those employees would receive both a mailing and an e-mailing, the need for a text message is eliminated.

In <u>Regan v. City of Charleston</u>, this Court faced the issue of whether the defendant should have to provide the plaintiff the e-mail addresses and phone numbers of potential plaintiffs.  In language directly applicable to the present request, the court denied plaintiff's request for phone and email information:

> District courts have taken a variety of positions and approaches as to what information regarding potential plaintiffs may or shall be disclosed to named plaintiffs at the notice stage of FLSA action. However, where, as here, the plaintiffs have provided no basis for their need for the telephone numbers or email addresses of potential plaintiffs and where the defendant has objected to the production of such information, the Court is persuaded by the case law in this circuit that tends to counsel against ordering production.

<u>Regan</u>, 2014 WL 3530135 at 6 (July 16, 2014).

WCSR 34116399v2

Moreover, the cases relied upon by Plaintiff do not support providing notice by text message. For example, in <u>Arevdo v. D.J.'s Underground, Inc.</u>, No. DKC 09-3199, 2010 WL 4026112 (D. Md. Oct. 13, 2010), the Court denied a request to disclose phone numbers where the request was based on speculation with regard to the effectiveness of notice by mailing and provided no evidence by way of affidavit establishing the need for phone numbers. The Court in <u>Schemkes v. Presidential Limousine</u>, 2:09-cv-1100, 2011 WL 868182 (D. Nev. March 10, 2011), also denied Plaintiff's request for phone numbers.

The rationale stated in <u>Regan</u>, *supra*., is particularly true in the present case, where there is no admissible evidence that mailing, the preferred method of notice, will not be effective. Plaintiff's counsel has made no showing of any "special need" for sending either an email or a text message, in addition to mailing, and these requests should therefore be denied.

## D.   **BULLETIN BOARD**

Defendants would oppose the posting of a laminated notice in any restaurant. In his brief, Plaintiff's counsel cited <u>Blakely v. Berkeley County</u>, 2:13-cv-01364-PMD, as a case in which posting was allowed. Counsel for Defendants has reviewed both the Consent Motion for Conditional Class Certification and to Authorize Notice to Potential Class Members (Docket Entry 20) and Order Granting Plaintiff's Motion to Authorize Notice to Potential Class Members (Docket Entry 21) in that case and can find no reference to posting. However, in <u>Regan</u>, *supra*., the issue of posting was specifically addressed in language directly applicable to the present case. In rejecting plaintiff's request to post a notice, this Court stated:

> ... the Court finds that requiring the City to post the Authorized Notice in its five stations will serve little purpose other than possibly increasing workplace tension, <u>particularly when the potential plaintiffs who stand to see such a posting – current firefighters – are the very employees for whom the City is most likely to have up to date contact information</u>.

2014 WL 3530135 at 11. (*emphasis added*)

The same reasoning applies in the present case since "the potential plaintiffs who stand to see such a posting ... are the very employees for whom the [Defendants]...have up to date contact information."   Under these circumstances, a posting within any restaurant is unnecessary "overkill" and could easily lead to the conclusion that Defendants are endorsing the lawsuit, when they are not.  Posting any notice should therefore be denied.

## IV.    PLAINTIFF'S PROPOSED NOTICE

With regard to Plaintiff's proposed Notice, Defendants object to a number of provisions as drafted.* Defendants believe Plaintiff's Notice is deficient and, should the court allow any Notice in this case, should be replaced with the Notice attached hereto as Exhibit N, which parallels, in large part, the Notice recently approved by this Court in Browder v. Peninsula Grill Associates, LLC, et al., Case No.: 2:14-cv-4135-PMD.  The specific deficiencies with regard to Plaintiff's proposed Notice are as follows:

1)  Definition of "Class" – The reference to "seafood" is presumably an oversight due to a "cut and paste" from a proposed Notice in another case being handled by Plaintiff's counsel. In addition,  it is somewhat unclear exactly what "class" the Plaintiff seeks to certify in this case. In his Memorandum, he states that the "putative class members are Kickin' Chicken employees who were paid less than the statutory minimum wage of Seven and 25/100 Dollars ($7.25) per hour and either contributed money to a tip pool or received money from a tip pool." Memorandum at p. 5.  Yet, in his proposed Notice, he omits the critical language "and either

29

contributed money to a tip pool or received money from a tip pool." Regardless, either proposed "class" would be overbroad.

As previously noted, Defendants do not believe any "class" should be certified. However, to the extent the Court determines to certify any "class" it should be limited to 1) servers at RP, Inc. who were hired before August 9, 2014; 2) were paid a direct or hourly rate less than the statutory minimum wage of $7.25 per hour; 3) contributed money from tips that he/she received into a mandatory tip pool; and 4) were employed during the three years preceding [the date of the order].[5]

As set forth in the Affidavits of John Fischer ("Fischer") and Perry Freeman ("Freeman"), the only individuals who received any tip out from the servers at the King Street restaurant, where Plaintiff worked, were closers, and they were paid $7.25 an hour or higher. Moreover, Fischer's Affidavit demonstrates that the tip out procedure in operation was discontinued at the King Street restaurant as of August 9, 2014.

In his Affidavit, Plaintiff maintains that one percent (1%) of his sales was distributed to bartenders. The Affidavits of Fischer and Freeman indicate that Plaintiff's contention is inaccurate and that all of the tip out at King Street went only to closers. However, even if Plaintiff's contention was true, the bartenders would not be included in a collective action since they would be entitled to share in a tip pool. See, e.g., Lenz v. Spanky's Restaurant II, Inc., 491 F. Supp2d, 663 at 671 (N.D. Tex. 2007) (noting that hosts and bartenders are entitled to share in a tip pool according to both "precedent and congressional intent on the issue." Moreover, the

---

[5] Defendants believe a two year statute would be appropriate and would oppose a three year statute since there was no willful violation in this case. However, counsel is aware that it would be this Court's preference to allow a three year "look back" at this stage and reserve any argument to a later date. Regan, 2014 WL 3530135 at 4.

bartenders were, themselves, tipped employees who received and kept their own tips and did not tip share with any other employees.  See Exhibits A and B, Affidavits of Fischer and Freeman. Thus, there is no basis in this case for any "class" other than servers at the King Street restaurant owned by RP, Inc.[6]

2) Opt-In Period Notification "Over Kill".  The Plaintiff requests that the opt-in date be referenced five times in bold – once on page 1, twice on page 2, and twice on page 3.  Such bold repetitiveness amounts to "over kill".  While any Notice would certainly inform the employees what the opt-in period is, once is enough.

3)  Class Versus Collective Action.  The reference of ("Class") in the name of the pleading is misleading since this is a collective action case.

4) Other Objections.

(a) Defendants would object to the reference to "Kickin' Chicken" in the collective form rather than proper corporate name(s);

(b) The first bold paragraph is unnecessary since it is redundant of language in the next paragraph;

(c) The first and second unnumbered paragraphs could better state their objectives if split into: (1) "Why you are receiving this Notice"; and (2) "Description of the lawsuit" headings. See Exhibit N.  The second sentence in Plaintiff's paragraph numbered 8 could also be moved to

---

[6] Even though there is no basis for including the other restaurants in this suit, the Affidavits of John Fischer, Brett Evans, Theresa Miller and Ryan Wheatley, general managers who worked at James Island and West Ashley (see Exhibits A, D, E, and G), are consistent with Exhibits A and B, the Affidavits of Fischer and Freeman, in this regard.  There was never a tip pool at Summerville (see Exhibit F, Affidavit of Jamie Heron), and there was no mandatory policy at Mt. Pleasant (see Exhibits B, C, and G, Affidavits of Tim Uecker, Perry Freeman, and Theresa Miller).

the "Description of the lawsuit" paragraph for better clarity. Moreover, the statement of what the Plaintiff is claiming against Defendants in the lawsuit is not accurate, since it includes "breakage", "salad preparers, dishwasher or door host", none of which is applicable in the case. Presumably this language is also from another lawsuit;

(d) As stated, the sections on page 2 with regard to the effect of joining and not joining are misleading since they are not the only alternatives. For example, the employee could decide to not join the suit but retain other counsel and file his or her own suit. There is also no mention that the employee might have to respond to written discovery, give a deposition, appear for trial, etc. Inclusion of such language is routinely required. See, e.g., White v. Kcpar, Inc., 6:05-cv-1317, 2006 WL 1722348 at 4 (M.D. Fla. June 20, 2006) and cases cited therein. Again, a clearer explanation of an employee's "Right to participate", the "Effect of joining" and the "Effect of not joining" are set forth more accurately and clearly in paragraph 3-5 of Defendants' Exhibit N. In addition, the language in the bullet point in the first numbered paragraph is inaccurate since it is conclusory as to "similarly situated", only references permitted to join and not language such as "or not" or "if they want to" and also implies they have certain rights when they may not.

e) Paragraph numbered 4 references Hyman's Seafood.

f) In paragraph numbered 2, Defendants object to the language "tips that were taken by Kickin' Chicken" as inaccurate and misleading, since it implies that the restaurant "took" the money, which it did not. Since Defendants do not agree that the tips would be subject to liquidated damages, the parenthetical is misleading and should be deleted. Also, information in this section would better be included in a "Description of what the lawsuit is about" section.

g) Paragraph numbered 5 is redundant.

WCSR 34116399v2

h) Paragraph numbered 6 is inaccurate, in that it does not contain the fact that employees may be responsible for costs should they not prevail. Such language is often included in Notices. See, e.g., Robbins-Pagel v. William F. Puckett, Inc., No. 05-cv-1582, 2006 WL 3393706 (M.D. Fla. Nov. 22, 2006). Also, it is inaccurate to say that the employee would be responsible for "paying" another attorney, since that person may have the same "no pay for any fee for services" arrangement as Plaintiff's counsel states in this paragraph. A more accurate statement would be that the employee would be responsible for any fee arrangement he or she made with any other attorney.

i) The reference to "class" in paragraph number 7 is inaccurate. It should be "FLSA Collective Action". Also, the reference to costs is not accurate, since if there is no recovery, Plaintiff might be responsible for Defendants' costs, as set forth above.

j) The reference to contacting the Court is unnecessary and also implies that the Court is commenting on an employee's "rights" rather than merely authorizing that a Notice be sent out. "In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 110 S. Ct. 482, 488 (1989).

k) The first sentence of paragraph 8 is redundant but, regardless, would be incorporated in paragraph one of Defendants' Exhibit N. The second sentence primarily belongs in the paragraph describing the lawsuit in paragraph two of Defendant's Exhibit N.

## V.    CONCLUSION

As set forth above, Plaintiff has failed to meet his burden of demonstrating either that any other employee at any of the five separate corporate Defendants is interested in participating in

this action; or that the employees he seeks to conditionally certify are similarly situated. Consequently, Plaintiff's Motion for Conditional Certification should be denied and this case should be allowed to proceed only as an individual action.[7]

WOMBLE CARLYLE SANDRIDGE & RICE, LLP

s/David B. McCormack
David B. McCormack, Esquire-Federal ID No.:  2774
David S. Yandle, Esquire-Federal ID No.:  5355
Ashley K. Kelley, Esquire-Federal ID No.: 10369
Five Exchange Street
P.O. Box 999
Charleston, SC  29402
(843) 722-3400
Email: dmccormack@wcsr.com; dyandle@wcsr.com
         akelley@wcsr.com

*Attorneys for Defendants*

Charleston, South Carolina
June 8, 2015

---

[7] As previously noted, to the extent this Court disagrees with Defendants' position in this regard, then the proposed "class" should be narrowed as set forth in Section IV(1) *infra.*; and that "class" should be conditionally certified solely as to Defendant, RP, Inc., the only entity with which Plaintiff had an employment, or any other, relationship.

34